IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIGER ASPECT KIDS & FAMILY LIMITED, | ) |
| Plaintiff, | ) Case No.: 25-cv-774 |
| v. | ) Judge Matthew F. Kennelly |
| | ) Magistrate Judge Garbriel A. Fuentes |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO THE MOTION TO VACATE THE PRELIMINARY INJUNCTION BY DEFENDANT NO. 104 "INTRICATEBYRISHABH" [DKT. NO. 85].**

Plaintiff submits its Response to the Motion to Vacate the Preliminary Injunction ("Defendant's Motion") by Defendant No. 85 "IntricateByRishabh" (hereinafter "Defendant") and in support thereof states:

**I.    INTRODUCTION**

In Defendant's Motion, Defendant makes several misstatements of fact. Defendant mistakenly claims that: 1. Defendant is a small business; 2. Defendant does not engage in the sale of products to the United States, and 3. Defendant has not infringed Plaintiff's federally registered trademarks or copyrights.

In reality, Defendant's business has a gross merchant volume of over $42,000, has slavishly used Plaintiff's MR. BEAN word marks to sell unauthorized products and sold an infringing product to Plaintiff's investigator located within this Court's jurisdiction.

Plaintiff, TIGER ASPECT KIDS & FAMILY LIMITED ("Plaintiff" or "MR. BEAN) is the owner of the MR. BEAN Trademarks and Copyrights and has taken measures to protect its

intellectual property from infringement by counterfeiters like Defendant, which deprive Plaintiff of legitimate sales and tarnish Plaintiff's reputation. Defendant has used Plaintiff's Trademarks and Copyrights to increase traffic to its interactive commercial website which sells unauthorized digital downloads of Mr. Bean on the e-commerce platform of Etsy. As a result, Defendant's claims of non-infringement should be given little credibility as Defendant's actions have created confusion in the marketplace and deprived Plaintiff of rightful sales. As a result, Defendant's Motion should be denied.

## II. STATEMENT OF FACTS

On January 23, 2025, Plaintiff filed a Complaint against numerous defendants, including Defendant No. 104 "IntricateByRishabh" alleging federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), copyright infringement (Count III) and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV) [Dkt. No. 1] and a Motion for Entry of a Temporary Restraining Order ("TRO") and supporting Memorandum. [Dkt. Nos. 1, 11, 12]. On January 24, 2025, this Court denied Plaintiff's Motion for Entry of a TRO because the images Plaintiff attempted to include in its complaint to contrast the authentic products versus the infringing products did not appear in the copy Plaintiff filed with the Court. [Dkt. No. 29].

On January 28, 2025, Plaintiff filed an Amended Complaint and Motion for Entry of a TRO and supporting Memorandum. [Dkt. Nos. 30, 33, 34]. On February 3, 2025, this Court granted Plaintiff's Motion for a TRO. [Dkt. Nos. 50, 51]. On February 12, 2025, Plaintiff filed a Motion to Extend the TRO [Dkt. No. 53] which was granted that same day and extended the TRO for an additional fourteen (14) days, or through March 4, 2025. [Dkt. No. 54].

On February 26, 2025, Plaintiff filed a Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. Nos. 58, 59]. Also on February 26, 2025, Plaintiff effectuated

service on the defendants identified on Schedule A, including Defendant. [Dkt. No. 61]. On March 1, 2025, this Court denied Plaintiff's Motion for Entry of a Preliminary Injunction because the docket did not reflect that the summons had been served on any of the defendants. [Dkt. No. 62].

On March 3, 2025, Plaintiff filed a Renewed Motion for Entry of a Preliminary Injunction and supporting Memorandum and served the defendants with copies of Plaintiff's Amended Complaint, TRO, Summons, Renewed Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. Nos. 64, 65, 68, 69]. On March 4, 2025, this Court denied Plaintiff's Renewed Motion for Entry of a Preliminary Injunction. [Dkt. No. 70].

On March 5, 2025, Plaintiff filed a Second Renewed Motion for Entry of a Preliminary Injunction and supporting Memorandum and served the defendants with copies of Plaintiff's Amended Complaint, TRO, Summons, Second Renewed Motion for Entry of a Preliminary Injunction and supporting Memorandum. [Dkt. Nos. 71, 72, 74]. On March 11, 2025, this Court granted Plaintiff's Second Renewed Motion for Entry of a Preliminary Injunction against the defendants identified in Schedule A, except Defendant No. 88 "temanvintage'. [Dkt. No. 77].

On March 20, 2025, Defendant No. 104 "IntricateByRishabh" filed a pro se Response to Plaintiff's Complaint and Request for Relief. [Dkt. No. 83].

On March 26, 2025, this Court interpreted the filing by Defendant No. 104 "IntricateByRishabh" as a Motion to Vacate the Preliminary Injunction and set a briefing schedule whereby Plaintiff's Response is due by April 7, 2025. [Dkt. No. 84].

### III. STATUTORY AUTHORITY

A party seeking to obtain a preliminary injunction must demonstrate that: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will

suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms needs favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms needs be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

IV.    **ARGUMENT**

    a.  **Plaintiff has Met the Standards for a Preliminary Injunction**

Defendant's Motion should be denied because the Preliminary Injunction was properly granted and to prevent further unlawful conduct by Defendant. The registrations for the MR. BEAN Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the MR. BEAN Trademarks pursuant to 15 U.S.C. § 1057(b). *See* Group Exhibit 1 – MR. BEAN Trademark Registrations. The MR. BEAN Trademark registrations qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used

4

and never abandoned. *See* Exhibit 2 - Declaration of Jay Harvey Paragoso at ¶ 7. Defendant's use of Plaintiff's MR. BEAN Trademarks to sell counterfeit products is causing consumer confusion and should be prohibited.

      **b. Plaintiff Will Likely Succeed on the Merits**

          i. **Plaintiff Will Likely Succeed on Its Trademark Infringement Claim**

Defendant's Motion should be denied because Plaintiff is likely to succeed on its trademark infringement and counterfeiting claims against Defendant. Defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendant is not authorized to use the trademark; and (3) Defendant's use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005). Plaintiff has satisfied all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim and therefore Defendant's Motion to Vacate the Preliminary Injunction should denied.

Regarding the first two elements, Plaintiff's MR. BEAN Trademarks are inherently distinctive and is registered with the United States Patent and Trademark Office on the Principal Register. Plaintiff is the owner of U.S. Trademark Registration Nos. 3,741,738 and 6,413,911 for the "MR BEAN" marks. Exhibit 2, at ¶ 5 and Group Exhibit 3. The MR. BEAN Trademarks have been continuously used and never abandoned. Exhibit 2 at ¶ 7. The Trademark

5

registrations constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the MR. BEAN Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendant to use the MR. BEAN Trademarks, nor is Defendant an authorized retailer of genuine MR. BEAN Products. *Id.* at ¶ 11.

In regard to the third factor, Defendant's use of Plaintiff's registered MR. BEAN Trademarks is likely to confuse consumers regarding the authenticity of the products being sold. The sale of Counterfeit MR. BEAN Products using the MR. BEAN Trademarks causes consumer confusion in the marketplace, which weakens Plaintiff's brand recognition and reputation. *Id.* at ¶ 20. When counterfeit products use the MR. BEAN Trademarks, Plaintiff's products and brand become associated with these inferior counterfeit products which are not subject to same quality control standards as products used with the MR. BEAN Trademarks. *Id.* at ¶ 19. Consumers attributing these inferior quality products with Plaintiff will result in increased skepticism and hesitance by consumers to purchase genuine MR. BEAN Products in the future, resulting in a loss of sales and undermining of Plaintiff's reputation and goodwill. *Id.* at ¶ 20.

Defendant's use of the MR. BEAN Trademarks on the product listed in the comparison chart below causes confusion in the marketplace and leads consumers to believe that the products being sold and marketed by Defendant belong to or are approved by Plaintiff. As demonstrated below, there is no difference between Plaintiff's registered Trademark and the counterfeit mark used by Defendant. *Compare* Group Exhibit 1 and Exhibit 3 – Evidence of Infringement (IntricateByRishabh).

| Plaintiff's Trademarks | Defendant's Product |
|---|---|
| Reg. No. 3,741,738<br><br>MR BEAN | Defendant No. 104 "IntricateByRishabh"<br> |
| Reg. No. 6,413,911<br><br>MR BEAN | Defendant No. 104 "IntricateByRishabh" |

A side-by-side comparison of Defendant's products with Plaintiff's MR. BEAN Trademarks demonstrate that consumers would be reasonably confused whether Defendant's products are made, endorsed or sponsored by Plaintiff because Defendant liberally uses the MR. BEAN Trademarks on numerous places on its website. Such liberal uses of the marks would suggest to the average consumer that the product was made by or endorsed by Plaintiff. As a

7

result, Plaintiff has demonstrated a likelihood of confusion between Defendant's counterfeit products and those sold by Plaintiff.

In its Motion, Defendant claims that "Defendant does not sell, market, or distribute any tangible goods or intangibles that allegedly infringe Plaintiff's trademarks or copyrights referenced in the complaint." Defendant's Motion, pg. 2, ¶ 4 [Dkt. No. 83]. From the comparison chart above as well as Defendant's webpage, which is attached as Exhibit 3, Defendant clearly uses the "MR. BEAN" Trademarks in the marketing and sale of its infringing products.

Defendant also erroneously claims that "Defendant does not engage in the manufacture, distribution, or sale of physical products in the United States or elsewhere." Defendant's Motion, pg. 1, ¶ 2 [Dkt. No. 83]. On September 10, 2024, Plaintiff's investigator purchased an infringing digital download from Defendant. *See* Exhibit 4, Declaration of Luis Figueroa, ¶ 4 and Exhibit A to the Declaration of Luis Figueroa. Defendant also had sales of ten (10) other infringing items. *Id.* at ¶ 7.

Defendant uses Plaintiff's registered MR. BEAN Trademark to market and describe its products and to give the consumer the impression that these products were sponsored or endorsed by Plaintiff. Defendant could have easily described the referenced products in many different ways, but chose to use the word "MR. BEAN" to piggyback off Plaintiff's goodwill to drive sales to its website, which has sold many products. According to the account information provided by Etsy, Defendant's e-commerce store has a gross merchant volume of $42,651.77. *Id.* at ¶ 7. This information contradicts Defendant's earlier statements that "Defendant does not engage in the manufacture, distribution, or sale of physical products in the United States or elsewhere" and "Defendant is a small independent business operator with an annual net income of approximately $8,000." Defendant's Motion, pg. 1, ¶¶ 1, 2 [Dkt. No. 83].

As a result, Plaintiff has established that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim against Defendant, and therefore Defendant's Motion should be denied.

ii. **Plaintiff is Likely to Succeed on Its Copyrights Infringement Claims**

A preliminary injunction should be entered against Defendant because Plaintiff is likely to succeed on its copyright infringement claim. To prevail on a claim of copyright infringement, under 17 U.S.C. § 501, Plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization …, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101.

Plaintiff is the owner of Copyright Registration Nos. PA 797-737, PA 797-738 and PA 802-568 for MR. BEAN. *See* Exhibit 2 at ⁋ 5 and Group Exhibit 5 – Copyright Registrations.

The infringing products being marketed and sold by Defendant is nearly identical to Plaintiff's copyright deposits. See the below comparison chart of the products being marketed for sale on Defendant's website. *See* Exhibit 3 and Group Exhibit 5.

| Reg. No. PA 802-568 | Defendant No. 104 "IntricateByRishabh" |
|---|---|
|  |  |

9

| Reg. No. PA 797-738 | Defendant No. 104 "IntricateByRishabh" |
|---|---|
|  |  |
| Reg. No. PA 797-737 | Defendant No. 104 "IntricateByRishabh" |
|  |  |

As can be seen in the comparison chart above, Defendant's products are derived from the distinctive creative content included in Plaintiff's Copyright Registrations and therefore the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of its claim for copyright infringement.

    **c. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly &*

*Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademark and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The harms caused by the sale of counterfeit products is equally damaging by depriving Plaintiff of the ability to control the quality of its brand by associating it with inferior quality goods. Exhibit 2 at ⁋ 19. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007).

Defendant's unauthorized use of the MR. BEAN Trademarks and Copyrights has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Exhibit 2 at ⁋ 20.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendant's infringing activities through injunctive relief. *See Promatek*

*Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages.").

In the absence of a preliminary injunction, Defendant will be able to continue to sell counterfeit products with impunity to the detriment of Plaintiff's current and future sales. The only recourse Plaintiff has to stop the sale of counterfeit MR. BEAN Products is by seeking an injunction, and in the absence thereof, Plaintiff will suffer irreparable harm. As such, the preliminary injunction against Defendant should remain in place.

d. **The Balancing of Harms Tips in Plaintiff's Favor**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement

12

of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

Thus, the balance of equities tips decisively in Plaintiff's favor and equity requires that Defendant be ordered to cease its unlawful conduct.

### e. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendant from violating federal trademark and copyrights law. The public is currently under the false impression that Defendant is selling products through its Internet Store with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendant's actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendant, or as to the identity of the owner of trademarks and copyrights used in connection with those goods. Unless Defendant's unauthorized use of the

MR. BEAN Trademarks and Copyrights are enjoined, the public will continue to be confused and misled by Defendant's conduct.

The public interest is best served by denying Defendant's Motion to vacate the Preliminary Injunction.

### f. Etsy's Listing Guidance is Not Controlling Authority

Defendant erroneously claims that "Defendant relied on Etsy's legal policies and marketplace safeguards, which monitor and remove any listings deemed infringing". Defendant's Motion, pg. 3, ¶ 11 [Dkt. No. 83]. Defendant cites no controlling authority, nor is there any controlling authority, for a defense to trademark infringement for seller who abide by Etsy's internal guidance for avoiding trademark infringement. Etsy's efforts to assist sellers avoid trademark infringement is not controlling authority for this or any other Court. Regardless of Etsy's internal policies or guidance, it is ultimately the responsibility of each seller to avoid infringing the intellectual property rights of others on its website.

### V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny the Motion to Vacate the Preliminary Injunction by Defendant No. 104 "IntricateByRishabh" for the reasons set forth above.

                                          Respectfully submitted,

Dated: April 7, 2025

                                        By:    <u>s/Michael A. Hierl</u>
                                                       Michael A. Hierl
                                                       William B. Kalbac
                                                       Robert P. McMurray
                                                       John Wilson
                                                       Hughes Socol Piers Resnick & Dym, Ltd.
                                                       Three First National Plaza
                                                       70 W. Madison Street, Suite 4000
                                                       Chicago, Illinois 60602
                                                       (312) 580-0100 Telephone
                                                       mhierl@hsplegal.com
                                                       wkalbac@hsplegal.com
                                                       Attorneys for Plaintiff
                                                       TIGER ASPECT KIDS & FAMILY
                                                      LIMITED

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, served by publication and email to the Defendants identified in Schedule A and served on all counsel of record and interested parties via the CM/ECF system on April 7, 2025.

/s/ *Michael A. Hierl*
Michael A. Hierl